Slip Op. 99 -93

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

                        :
                        :

**DAL-TILE CORP.,**         :

                        :

        **Plaintiff,**     :

                        :

    **v.**               :       **Court No. 95-11-01550**

                        :       **BEFORE: CARMAN, CHIEF JUDGE**

**UNITED STATES,**     :

                        :

        **Defendant.**   :

                        :

_____ :

Defendant, United States, moves, pursuant to Rule 15(a) of the Rules of this Court, for leave to file an amended answer and counterclaims relevant to a contract of settlement with plaintiff, Dal-Tile Corporation, purportedly settling the underlying claim for interest in this matter. Defendant also moves, pursuant to Rule 7(c) of the Rules of this Court, for oral argument on the motion. Plaintiff, Dal-Tile Corporation, opposes defendant's motions on the grounds of undue prejudice, undue delay, and futility.

*Held*: This Court denies defendant's Motion for Leave to File an Amended Answer and Counterclaims finding it unduly delayed and prejudicial. Defendant's Motion for Oral Argument is denied as moot.

Date: September 2, 1999

*Ross & Hardies* (*Joseph S. Kaplan*), New York, New York, for plaintiff.

*David W. Ogden*, Acting Assistant Attorney General of the United States; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*James A. Curley*), for defendant.

## OPINION

**CARMAN, CHIEF JUDGE:** Pursuant to its Motion for Leave to File an Amended Answer and Counterclaims, defendant, United States, seeks to amend its answer contending that when it answered plaintiff's complaint in this action, its counsel was unaware of the contract

of settlement between it and plaintiff, Dal-Tile Corporation (Dal-Tile), which purportedly settled any claim for interest on the overpayment of duties on those entries covered by the contract of settlement.

Defendant proposes five amended defenses and two counterclaims. The defenses state: (1) all claims for interest were compromised and settled as part of the contract of settlement;[1] (2) Dal-Tile waived any claim it might have had to interest on the refund when it entered the contract of settlement; (3) plaintiff is estopped from claiming it has a right to receive interest on the refund memorialized by the contract of settlement; (4) in accordance with the doctrine of unclean hands, plaintiff's claim is unenforceable and should be dismissed because of its bad faith or inequitable conduct in not disclosing to the defendant its intent to claim interest on the refund at a later time; and (5) if plaintiff is entitled to interest under 19 U.S.C. § 1505(c) (1994) as amended by the Customs Modernization Act of 1993, then interest is owed only on the refunded duty actually deposited on each entry identified in the complaint and not on the total excess duty paid on all entries originally protested by plaintiff. The counterclaims are: (1) a claim for breach of the contract of settlement; and, in the alternative, (2) a claim for rescission of the contract of settlement and the restitution to defendant of the eight million dollar refund based on plaintiff's intentional failure to disclose its intent to seek interest on the refund which induced defendant to enter the contract of settlement.[2]

---

[1] The Court notes that claims for countervailing duties were explicitly excluded from the contract of settlement.

[2] While the plaintiff refers to defendant's second counterclaim as one for fraudulent inducement, (*see* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Leave to File an Amended Answer and Counterclaims (PM) at 12), the defendant seems to reject

Defendant filed a separate Motion for Oral Argument on its Motion for Leave to File an Amended Answer and Counterclaims. Plaintiff opposes defendant's motions alleging that defendant's proposed amendments are inexcusably and unduly delayed, unduly prejudicial, and futile. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

BACKGROUND

In accordance with a demand for payment from the United States Customs Service (Customs), plaintiff, Dal-Tile, paid duties on numerous entries of wall and floor tile from Mexico during the years 1989 through 1993. Believing the liquidated duties it paid were excessive, Dal-Tile protested the liquidations pursuant to 19 U.S.C. § 1514 (1988). Plaintiff and defendant entered settlement discussions regarding plaintiff's protest that resulted in plaintiff sending defendant an offer letter in compromise and settlement dated November 30, 1994.[3] Defendant

---

this characterization. (*See* Defendant's Reply to Plaintiff's Opposition to the Defendant's Motion for Leave to File an Amended Answer and Counterclaims at 5.) As the Court does not address the substantive issues in this counterclaim, it is unnecessary for the Court to resolve this dispute.

[3] The relevant portion of plaintiff's offer letter in compromise, dated November 30, 1994, states:

Pursuant to 19 U.S.C. § 1617, Dal-Tile offers to compromise the protested claim against the U.S. Customs Service concerning the tariff classification of Dal-Tile's entries of wall and floor tile from Mexico, during the years 1989 through 1993, on the following terms:
1.     The U.S. Customs Service shall grant Dal-Tile's protests concerning these entries to the extent that Dal-Tile shall receive refunds of Customs duties deposited in the amount of $8.0 million. The remaining protests filed by Dal-Tile concerning these entries shall be denied.

2.     All protests filed by Dal-Tile contesting the classification of tile imported from Mexico from 1989 through 1993 shall be decided by the Customs Service in accordance with this offer and compromise and Dal-Tile agrees not to further

unconditionally accepted the offer in a letter dated December 13, 1994,[4] thereby forming what the

parties have termed the "contract of settlement."[5]  (Defendant's Proposed Amended Answer and

Counterclaims (DPAC) at 2.)  The contract of settlement stated that Dal-Tile would receive a

refund of duties in the amount of eight million dollars.  In return, Dal-Tile agreed not to "further

protest, contest, or challenge in any manner the tariff classification of any of the[] [protested]

entries during the[] years [1989-1993]."  (DPAC, Defendant's Exhibit A.)  The contract was

--------

> protest, contest, or challenge in any manner the tariff classification of any of these entries during these years.
>
> 3.       Dal-Tile would agree not to file any further protests contesting the liquidation of entries of tile imported from Mexico from 1989 through 1993, classified pursuant to Customs Service instructions under HTS Subheading 6908.10.50, as ceramic tile.

(Defendant's Proposed Amended Answer and Counterclaims (DPAC), Defendant's Exhibit A.)

[4] The relevant portion of defendant's letter of acceptance dated December 13, 1994 states: "Please be advised that U.S. Treasury accepts the offer in compromise from Dal-Tile Corporation on the terms stated in your letter of November 30 . . . ."  (DPAC, Defendant's Exhibit B.)

[5] In a letter to the Court dated April 23, 1999, the parties jointly submitted that the "'contract of settlement' is described in paragraph 7 of the proposed amended answer." (Letter from James A. Curley, Trial Attorney, United States Department of Justice, to the Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade (April 23, 1999).) Paragraph 7 of the proposed amended answer states:

> 7.     The plaintiff submitted a written offer in compromise dated November 30, 1994, to the Department of Treasury.  In the offer in compromise, the plaintiff agreed to settle its claims to the tariff classification of entries of wall and floor tile imported from Mexico between 1989 and 1993, in return for a refund of duty in the amount of $8 million. Matters relating to countervailing duties were expressly excluded from the offer in compromise.  The Department of Treasury accepted the offer in compromise on December 13, 1994, thus forming a contract which fully settled the plaintiff's claims, except as to countervailing duties, and which is hereinafter referred to as the "contract of settlement."

(DPAC at 2.)

silent as to interest issues.  In January 1995, in order to effectuate the refund, defendant chose

nine entries covered by plaintiff's protest to reliquidate, thereby generating the agreed upon eight

million dollar refund.


On March 27, 1995, Dal-Tile timely protested defendant's failure to pay interest on the

full amount of plaintiff's refund resulting from the nine reliquidated entries.  Dal-Tile alleged

Customs was required to pay interest on Dal-Tile's refund pursuant to 19 U.S.C.

§ 1505(c) (1994), which had been amended by the Customs Modernization Act of 1993 (Act) to

require the payment of interest on excess duties resulting from liquidation or reliquidation.[6]  Prior

to the amendment, Customs was not authorized by statute to pay interest when refunding paid

excess duties.  *See Kalan, Inc. v. United States*, 944 F.2d 847, 850 (Fed. Cir. 1991) (stating 19

U.S.C. § 1520(d) (1988) (repealed 1993) does not clearly mandate the payment of interest on

duties deposited on entries and subsequently refunded).  Despite this change in the law, however,

defendant still denied the protest.  In December 1995, plaintiff timely filed its complaint in this

action.  Defendant denied in its answer that the Customs Modernization Act of 1993 provides that

when liquidation of entries results in a refund of overpayment of duties, the government is

---

[6] In 1993, Congress enacted the Customs Modernization Act of 1993 (Act) as part of the
North American Free Trade Agreement Implementation Act.  *See* Pub. L. No. 103-182, 107 Stat.
2057 (codified as amended in scattered sections of 19 U.S.C.).  The changes provided by the Act
became effective upon the Act's enactment date, December 8, 1993.  *See id.* at § 213, 107 Stat
2057, 2099.  The Act amended 19 U.S.C. §1505(c) to provide, in relevant part, that:

> Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary,
> from the date the importer of record deposits estimated duties, fees, and interest . . . to the
> date of liquidation or reliquidation of the applicable entry or reconciliation.

Pub. L. No. 103-182, 107 Stat. 2057, 2205.

required to pay interest on the amount of the excess moneys deposited and that by refusing to pay interest on plaintiff's overpayment of duties deposited, Customs violated 19 U.S.C. § 1505(c).[7]

In July 1997, this Court stayed all proceedings in this case until a final decision was made by the Federal Circuit regarding the Customs Modernization Act's application to protests filed prior to, but acted upon by Customs after, the Act's effective date. In *Travenol Labs., Inc. v. United States*, 118 F.3d 749 (Fed. Cir. 1997), the Federal Circuit established a right to interest on all entries liquidated or reliquidated after the effective date of the Customs Modernization Act, regardless of whether the protests were filed prior to the Act's effective date. *See id*. at 753. The Court vacated the stay in January of 1998. Defendant now seeks to amend its answer with defenses and counterclaims which are based on the above-mentioned contract of settlement and circumstances surrounding that contract and its negotiation.

CONTENTIONS OF THE PARTIES

A.     *Defendant-Movant*

Defendant contends in its Motion for Leave to File an Amended Answer and Counterclaims that when it answered the complaint in this action, its counsel was unaware of the contract of settlement between it and Dal-Tile, and due to the "pro forma" nature of the

---

[7] Both parties admit, in papers submitted to the Court, that plaintiff's original protests were filed prior to the effective date of the Customs Modernization Act of 1993. (*See* PM at 2 and Letter from James A. Curley, Trial Attorney, United States Department of Justice, to the Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade (June 4, 1999).) The parties further admit the contract of settlement was entered into and the reliquidations took place after the effective date of the Act. (*See* PM at 2-3 and Defendant's Motion for Leave to File an Amended Answer and Counterclaims at 1-2.)

complaint, it did not investigate beyond the facial allegations of the claim. As a result, defendant's counsel failed to raise any affirmative or separate defenses or assert any counterclaims based on the contract of settlement and the circumstances surrounding the contract and its negotiation.

Defendant asserts while some time has passed between the vacating of the stay in this matter and defendant's motion, plaintiff will not be unduly prejudiced by defendant's proposed amendments because nothing has occurred that would prevent plaintiff from taking whatever action is necessary to prosecute its claim. Further, defendant argues, if the Court were to grant defendant's motion, plaintiff would not be prejudiced because subsequent to filing its opposition to defendant's motion, plaintiff apparently came into possession of the material documents related to the contract of settlement and its negotiation that had been lost or misplaced. Furthermore, defendant claims any prejudice plaintiff may suffer is outweighed by the prejudice to defendant, since a denial of the motion would foreclose defendant from showing that plaintiff's claim was settled, waived, or unenforceable.

Defendant also asserts that "the government's intent was not to pay interest when it agreed to settle the plaintiff's claim." (Defendant's Reply to Plaintiff's Opposition to the Defendant's Motion for Leave to File an Amended Answer and Counterclaims at 2.) Defendant contends that "plaintiff knew the defendant did not pay interest on the type of duty refund over which the parties were negotiating, and that the Treasury Department did not intend to pay interest." (*Id.* at 5.) Further, defendant argues that plaintiff, by entering into the agreement, waived its claim for interest. Defendant claims that merely because, on its face, the contract of

settlement does not state it is intended to be a full and final expression of the agreement, does not mean that plaintiff did not settle all claims including any for interest.

Furthermore, defendant argues that all its proposed defenses as well as its proposed counterclaims of breach of contract and recission based on plaintiff's failure to disclose are meritorious and should be allowed by the Court. First, defendant argues that because intent is a question of fact when interpreting a settlement contract, defendant's breach of contract claim is not futile because it would withstand a motion to dismiss. This is so, defendant argues, because allegations which present issues of fact for the Court, must be taken to be true for the purposes of a motion to dismiss. Defendant alleges that it entered into the contract of settlement with no intention of paying interest. Second, with regard to its proposed counterclaim for recission based on plaintiff's failure to disclose, defendant argues that it is not subject to the specificity requirements of U.S. CIT R. 9(b)[8] because it does not allege fraud.

B.      *Plaintiff-Opponent*

Plaintiff, Dal-Tile, contends defendant's proposed amended answer and counterclaims are unduly delayed. Dal-Tile asserts, in its opposition to defendant's motion, that the initial complaint in this action is a concise and accurate statement of the relevant facts and circumstances in the case which clearly puts defendant on notice of plaintiff's claims. Plaintiff

---

[8] U.S. CIT R. 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) applies to claims, defenses, and counterclaims. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297, at 616 (2nd Ed. 1990) (discussing FED. R. CIV. P. 9(b) which parallels U.S. CIT R. 9(b)).

alleges similarities to other pleadings filed by other plaintiffs against the United States did not discharge defendant of its responsibilities and its obligations to investigate the facts underlying Dal-Tile's complaint in this matter. Plaintiff argues that defendant's negligence in failing to read its own file should not be an excuse for defendant's undue delay.

Plaintiff also contends that defendant's proposed defenses and counterclaims are futile because they are legally insufficient. First, with regard to the proposed defenses, plaintiff claims, because the contract of settlement did not refer to or include the issue of interest, the contract did not compromise plaintiff's claim to, bar plaintiff's claim for, or waive plaintiff's right to interest on the refund. Plaintiff argues under 19 U.S.C. § 1505(c) as amended by the Customs Modernization Act of 1993, it had an undeniable right to interest which was confirmed by the Federal Circuit in *Travenol*. Further, plaintiff argues that any waiver or compromise of such a right would have to be clearly and unmistakably stated in the contract of settlement or evident through silence or inaction. Plaintiff reiterates that the contract was silent as to interest, and plaintiff actively pursued its claim for non-payment of interest.

Second, with regard to the proposed counterclaims, plaintiff argues that both are futile because neither would survive a motion to dismiss. Defendant's claim for breach of contract would fail, plaintiff contends, because the issue of interest was not a term in the contract of settlement, and there is no evidence that the parties intended the contract to be an incomplete expression of their agreement. Therefore, in filing its complaint for interest, plaintiff could not have breached the contract of settlement, making defendant's counterclaim futile and subject to dismissal. Dal-Tile also contests, on grounds of futility, defendant's proposed counterclaim of

recission based on plaintiff's failure to disclose.  Dal-Tile characterizes this counterclaim as fraudulent inducement to contract.  Plaintiff argues that defendant failed to plead the alleged fraud with particularity in violation of U.S. CIT R. 9(b).  According to plaintiff, defendant failed to set forth the time, place, and contents of the false representations that led to the alleged inducement.  Since defendant's counterclaims would not withstand a motion to dismiss, the Court should deny the motion to amend the pleading as futile.

Finally, plaintiff asserts that granting of defendant's motion for an amended answer and counterclaims would be unduly prejudicial.  Through an affidavit prepared by its general counsel, Mark A. Sollis, plaintiff contends that the Chief Executive Officer and the Chief Financial Officer of Dal-Tile, who sent the offer in compromise to defendant, no longer work for plaintiff, and the files and documents related to the offer of compromise are missing.  Furthermore, after the settlement negotiations, Dal-Tile's counsel, Steven P. Kersner[9], terminated his law practice, and various documents related to the contract of settlement were lost or misplaced.  As a result, plaintiff asserts that it would be greatly disadvantaged and deprived of the opportunity to present facts or evidence which would otherwise have been at its disposal if defendant's proposed amendments had been made in the initial pleadings.

---

[9] During the initial offer and compromise underlying this case, Mr. Kersner was a partner at Brownstein, Zeidmand & Schomer.  (*See* PM, Exhibit A.)  The eight million dollar settlement and the filing of the summons and the complaint in this action were filed while Mr. Kersner was at Ross & Hardies.  (*See id*.)  Thereafter, Mr. Kersner ceased to practice law.  (*See id*.)

DISCUSSION

A.    *Leave to Amend*

U.S. CIT R. 15(a) provides that once responsive pleadings have been served, a party may amend its pleadings "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."   Pleadings include complaints, answers, replies to counterclaims, and answers to cross-claims.  *See* U.S. CIT R. 7(a).  It is within the discretion of the trial court to grant or deny a motion for leave to amend a pleading under Rule 15(a).  *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971).[10]

U.S. CIT R. 13(e)[11] states, with regard to counterclaims, when "a pleader fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."  Denial or grant of a motion for leave to amend a pleading to assert omitted counterclaims is within the discretion of the trial court.  *See Tomoegawa (U.S.A.), Inc. v. United States*, 15 CIT 182, 186, 763 F. Supp. 614, 618 (1991) (applying discretionary judicial standard to case involving a motion for leave to amend a pleading to assert omitted counterclaims).

The Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), held that if a court wished to deny a litigant leave to amend its pleadings, it must provide a "justifying reason." *Id.* at 182.  The Supreme Court provided a list of factors that a court may consider when deciding whether to

---

[10] *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971), cites to FED. R. CIV. P. 15(a) which parallels U.S. CIT R. 15(a).

[11] U.S. CIT R. 13(e) parallels FED. R. CIV. P. 13(f).

deny or grant leave to amend. These factors include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of [the] amendment, etc. . . ." *Id.* These factors may also be considered by a court when deciding whether to grant leave to assert omitted counterclaims. *See Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989); *see generally Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940-41 (4th Cir. 1995); *Tomoegawa*, 763 F. Supp. at 618.

B.     *Defendant's Motion for Leave to File an Amended Answer and Counterclaims*

1.     *Undue Delay*

"[A]t some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive." *Te-Moak Bands of Western Shoshone Indians of Nevada v. United States,* 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981)) (finding an eight year delay inexcusable and sufficient reason to deny motion to amend). Such inexcusable delay, if it becomes undue, can, by itself, be fatal to a motion to amend. *See Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045-47 (Fed. Cir. 1992) (finding undue delay because movant was or should have been aware for years of facts upon which it had based its proposed amendment). When delay has occurred, the Federal Circuit has placed the burden to justify the request for an amendment on the movant. *See Te-Moak*, 948 F.2d at 1263 (stating this shift in burden is consistent with circuit court precedent which has stated, when undue delay occurs, "the Court will place the burden on [the movant] to show a valid reason for

the neglect and delay") (citing *Vargas v. McNamara*, 608 F.2d 15 (1ˢᵗ Cir. 1979)).

In this case, the Court finds that defendant's delay in bringing its proposed amendments was undue, inexcusable, and fatal to defendant's motion. In the papers before the Court, the Government implies its delay was excusable since plaintiff's complaint was not well-plead in that plaintiff failed to mention the contract of settlement. Dal-Tile asserts, however, its complaint was a concise and accurate statement of the facts which put the defendant on notice of Dal-Tile's claims. The Court agrees with Dal-Tile's assessment.

> The function of a party's pleadings is to give
>
> the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details. . . . [A] complaint is not subject to dismissal with prejudice unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations.

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215, at 138-46 (2ⁿᵈ Ed. 1990) (footnotes omitted). Indeed, WRIGHT AND MILLER urges the pleader "not to allege facts that constitute a defense to his claim for relief, or, for that matter, a defense to his defense."[12] *Id.* § 1226, at 207-08. In any case, the defendant has a duty to examine its situation and determine its position prior to answering a complaint. *See Long v. Lipkins*, 96

---

[12] At the minimum, pleadings should sufficiently state facts to "'differentiate the situation of fact which is being litigated from all other situations to allow the application of the doctrine of *res judicata*.'" *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1225, at 207 n.1 (2ⁿᵈ Ed. 1990) (quoting *Simplified Pleading*, 2 F.R.D. 456, 457 (1943)).

F.R.D. 234, 235 (E.D. Pa. 1983); *Jones v. Ambler Quarry, Inc.*, 64 F.R.D. 696, 698 (E.D. Pa. 1974).

The Court finds that plaintiff was under no obligation in its pleadings to mention the contract of settlement and that its complaint was sufficient to give defendant notice of the situation of fact being litigated. Moreover, plaintiff argues, and the Court agrees, that even the most cursory examination of the facts of this case would have disclosed the existence of the contract of settlement. Defendant received plaintiff's complaint in December of 1995 and filed the instant motion in March of 1999. Even excluding the six month stay imposed by the Court, defendant had over thirty-two months in which to examine its files and discover the contract of settlement.

The Court finds that defendant has failed in its burden of "show[ing] a valid reason for the neglect and delay." *Te-Moak*, 948 F.2d at 1263. Defendant's failure to investigate, over a thirty-two month period, the fundamental fact of whether it had previously settled with plaintiff over the contested entries was neglectful. Accordingly, the Court finds defendant's delay undue and fatal to its motion to amend.

2.      *Undue Prejudice*

To show undue prejudice, the opposing party "'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendment[] been timely.'" *See Ford Motor Co. v. United States*, 896 F. Supp. 1224, 1231 (CIT 1995) (citing *Cuffy v. Getty Ref. & Mtkg. Co.*, 648 F. Supp. 802, 806 (D. Del.

1986)) (appearing to apply this standard to the "undue prejudice" factor identified in *Foman*, 371 U.S. at

182).  Additionally, if the amendments substantially change the theory of the case or would make trial far

more complicated and lengthy for the plaintiff, the added time and expense that would have to be

incurred countering those new claims is also an appropriate prejudicial basis for denying a motion to

amend.  *See* 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487, at 623-26

(2nd Ed. 1990).

        In an attempt to satisfy its burden of proof, plaintiff asserts through the affidavit of its general

counsel, Mark A. Sollis, that it would be prejudiced by defendant's proposed amendments because the

evidence regarding the contract of settlement is stale, the persons with the knowledge of the settlement

negotiations are no longer employed or associated with plaintiff, and plaintiff's counsel at the time the

contract of settlement was drafted no longer practices law.  Defendant, on the other hand, argues Dal-

Tile will not be prejudiced by the instant motion because most of the missing documents have been

found, and, as a result, plaintiff will not be unduly burdened or disadvantaged by any additional discovery

that might be necessary if defendant's motion be granted.  The Court disagrees with defendant.

        Since defendant's proposed allegations are of a subjective nature, given that defendant has not

submitted any affidavits in support of its assertions regarding the intent of the various parties to the

contract of settlement, the Court foresees the need for extensive discovery related to all of defendant's

proposed defenses and counterclaims.  Furthermore, defendant's proposed amendments substantially

change the theory of the case to focus on the parties' intent with regard to a contract made over four

years ago and would make a trial much more complicated and

lengthy for plaintiff.  Also, defendant's proposed counterclaims, if granted, may further procedurally burden plaintiff in that the counterclaims may force plaintiff's involvement in substantial motion practice (*e.g*., Motion to Dismiss).   As a result, if the Court grants defendant's motion to amend, there would be "undue prejudice to the opposing party by virtue of allowance of the amendment."  *Foman*, 371 U.S. at 182.  Accordingly, the Court finds defendant's proposed amendments and counterclaims unduly prejudicial.

Because the Court finds undue delay and undue prejudice sufficient grounds on which to deny defendant's Motion to File an Amended Answer and Counterclaims, the Court will not address the futility of defendant's proposed defenses and counterclaims.

CONCLUSION

For the reasons stated herein, the Court denies Defendant's Motion for Leave to File an Amended Answer and Counterclaims as unduly delayed and prejudicial.  Defendant's Motion for Oral Argument is denied as moot.

_____
Gregory W. Carman
Chief Judge

Dated: September 2, 1999
        New York, New York